**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Keith Ramon ALLEN, Jr.,**
**Defendant–Appellant.**

**No. 03–4701.**

United States Court of Appeals,
Fourth Circuit.

Argued: Feb. 3, 2006.

Decided: May 5, 2006.

**ARGUED:** Derrick Ward Lefler, Gibson, Lefler & Associates, Princeton, West

Virginia, for Appellant. John Lanier File, Assistant United States Attorney, Office of the United States Attorney, Beckley, West Virginia, for Appellee. **ON BRIEF:** Kasey Warner, United States Attorney, Beckley, West Virginia, for Appellee.

Before NIEMEYER, MOTZ, and KING, Circuit Judges.

Affirmed by published opinion. Judge KING wrote the opinion, in which Judge NIEMEYER and Judge MOTZ joined.

## OPINION

KING, Circuit Judge:

Keith Ramon Allen appeals from the 156–month sentence imposed upon him in the Southern District of West Virginia, in August 2003, on his conviction for distributing cocaine base. The court sentenced Allen as a career offender, in accordance with § 4B1.1 of the United States Sentencing Guidelines. On appeal, Allen contends that the court erred in treating him as a career offender, and also maintains that his sentence contravened the principles enunciated by the Supreme Court in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). As explained below, we affirm.

## I.

On January 28, 2003, a federal grand jury in Charleston, West Virginia, returned a fourteen-count indictment charging Allen and others with various controlled substance offenses. More specifically, the indictment charged Allen with four crimes: three counts of distributing cocaine base, in contravention of 21 U.S.C. § 841(a)(1) (Counts Two, Twelve, and Fourteen); and a single count of

conspiring to distribute five or more grams of cocaine base, in violation of 21 U.S.C. § 846 (Count One). On April 7, 2003, pursuant to a plea agreement, Allen pleaded guilty to the distribution offense alleged in Count Fourteen, and the prosecution thereafter dismissed the charges leveled against him in Counts One, Two, and Twelve.

Allen's Presentence Report (the "PSR") was prepared and submitted to the sentencing court on July 30, 2003.[1] On the basis of Allen's offense of conviction, the PSR calculated his base offense level at 28 and his criminal history category as V. The PSR recommended, however, that Allen be deemed a career offender pursuant to § 4B1.1 of the Guidelines, and that his base offense level and criminal history category be set accordingly. Because Allen's guilty plea was to an offense carrying a statutory maximum sentence of twenty years of imprisonment, *see* 21 U.S.C. § 841(b)(1)(C), the PSR recommended calculating his base offense level as 32 and his criminal history category as VI. *See* USSG § 4B1.1.

Both Allen and the Government filed written objections to the PSR's recommendations. As relevant here, Allen contended that he was not eligible for career offender treatment because he did not have two qualifying prior felony convictions, as required by § 4B1.1(a). Pursuant thereto, a defendant qualifies for treatment as a career offender if (1) he was at least eighteen years old when he committed "the instant offense of conviction"; (2) "the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense"; and (3) the defendant has "at least two prior felony

---

1. In calculating Allen's recommended sentencing range, the PSR utilized the 2002 edition of the Guidelines, and the sentencing court relied on that edition in sentencing Allen.

convictions of either a crime of violence or a controlled substance offense." USSG § 4B1.1(a). Allen did not object to the PSR's conclusion that, in 2000, he had been convicted of three controlled substance offenses in Surry County, North Carolina (the "2000 Convictions"), and that, when appropriately aggregated, those convictions properly counted as a single qualifying conviction under the career offender Guideline. He maintained, however, that contrary to the PSR's recommendation, three earlier controlled substance convictions in North Carolina in 1995 (the "1995 Convictions"), should not count for career offender purposes.

Allen's 1995 Convictions occurred when he was seventeen years of age, and resulted from his August 17, 1995 guilty pleas in the Superior Court of Surry County, North Carolina. Allen had been indicted in Surry County on three counts of sale and delivery of cocaine, and three counts of possession with intent to sell and deliver cocaine, all in contravention of North Carolina General Statutes section 90–95. Pursuant to a plea agreement with the state prosecutor, the three counts of possession with intent to sell and deliver were consolidated with the three sale and delivery charges, and his guilty pleas yielded a total of three 1995 Convictions. On each of his three 1995 Convictions, Allen was sentenced to be "imprisoned" for six to eight months, with the sentences to run consecutively. The Superior Court suspended each of the three sentences, however, and placed Allen on thirty months of supervised probation. In January 1996, Allen's period of supervision was revoked and he thereafter served eighteen months in prison.

In contesting the PSR's career offender recommendation to the sentencing court, Allen maintained that his 1995 Convictions could not be counted because they were not "adult convictions," as required by § 4B1.1.[2] He further urged the court to treat the 1995 Convictions as irrelevant non-felonies. In his view, a prior conviction for an offense committed before a defendant's eighteenth birthday, even an adult conviction, is not a "felony" within the meaning of the career offender provision, unless the defendant actually received a sentence of more than one year and one month imprisonment.[3] Because Allen received a six-to-eight-month sentence for each of his 1995 Convictions, he asserted that the convictions were not felonies. Moreover, Allen maintained that the convictions could not be aggregated (to yield a total sentence of more than one year and one month) and treated as a single qualifying felony.

Allen's sentencing hearing was conducted in the district court on August 14, 2003. At the hearing, Allen renewed his objection to the PSR's recommendation that he be treated as a career offender under the Guidelines. The prosecutor, in support of

---

2. Application Note 1 to § 4B1.1 provides that "'crime of violence,' 'controlled substance offense,' and 'two prior felony convictions' are defined in § 4B1.2." USSG § 4B1.1, comment. (n.1). Application Note 1 to § 4B1.2, in turn, provides, as relevant here, that "'[p]rior felony conviction' means a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, . . . regardless of the actual sentence imposed." USSG § 4B1.2, comment. (n.1).

3. Allen's position—that a prior conviction for a crime committed before his eighteenth birthday was not a felony for career offender purposes if he was not actually sentenced to more than one year and one month imprisonment—was premised on Application Note 7 to § 4A1.2. As relevant, Application Note 7 provides that "for offenses committed prior to age eighteen, only those that resulted in adult sentences of imprisonment exceeding one year and one month . . . are counted."

the PSR's recommendation, contended that the relevant North Carolina court records revealed that Allen's 1995 Convictions were for related conduct and therefore should be aggregated as a single felony conviction for career offender purposes. In support of the position that Allen's 1995 Convictions were adult convictions, the United States Attorney proffered the testimony of Jeffrey Gwinn, the probation officer who had prepared the PSR. J.A. 63.[4] According to the proffer, Gwinn, if called at the sentencing hearing, would have testified "that he spoke with authorities in North Carolina who advised him that the [1995] cases against [Allen] were adult cases, [and] were handled in adult court, proceeded as though he were an adult," and that Allen "received adult sentences in those cases." *Id.*

The sentencing court, in ruling on the career offender issue, accepted the Government's proffer of Gwinn's testimony and overruled Allen's objection to the PSR's career offender recommendation. On the issue of whether Allen's 1995 Convictions were juvenile convictions, the court observed that "Mr. Gwinn confirmed through officials in Surry County, North Carolina that the '95 convictions were, in fact, considered as adult convictions," and

it found that "even though [Allen] was under eighteen at the time, the convictions count as adult convictions." J.A. 65. Then, applying the standard we articulated in *United States v. Breckenridge*, 93 F.3d 132 (4th Cir.1996),[5] the court concluded that at least the first two of the 1995 Convictions could properly be aggregated to qualify as a single felony conviction for purposes of § 4B1.1 of the Guidelines. J.A. 67–68. As an alternative to its *Breckenridge* ruling, the sentencing court determined that, because each of Allen's 1995 Convictions carried a potential punishment of more than one year of imprisonment, each of them independently qualified as a "prior felony conviction" under § 4B1.1, rendering any aggregation unnecessary. *Id.* at 68–69.

Accordingly, the sentencing court sentenced Allen under the career offender provision, and it calculated his base offense level as 32. J.A. 72. After the court reduced his offense level by three points for acceptance of responsibility, Allen's total offense level was 29, which, combined with the criminal history category of VI mandated by the court's career offender finding, yielded a sentencing range of 151 to 188 months. *Id.* at 72–73.[6] The court

---

4. Our citations to "J.A. ___" refer to the contents of the joint appendix, filed by the parties in this appeal.

5. In *Breckenridge*, we considered whether a sentencing court should have aggregated separate prior convictions and treated them as a single conviction under the Guidelines, because the offenses underlying them were "related," in that they were "part of a common scheme or plan." *See* 93 F.3d at 138. In so doing, we recognized eight factors that courts have looked to in deciding whether separate offenses form part of a common scheme or plan:

> whether the crimes were committed within a short period of time, in close geographic proximity, involved the same substantive offense, were directed at a common victim,

were solved during the course of a single criminal investigation, shared a similar *modus operandi*, were animated by the same motive, and were tried and sentenced separately only because of an accident of geography.

*Id.*

6. Count Fourteen of the indictment, to which Allen pleaded guilty, did not allege a drug quantity, but charged Allen with distributing "a quantity of cocaine base" in contravention of 21 U.S.C. § 841(a)(1). Absent either a drug quantity finding or career offender enhancement, Allen's base offense level would have been 12, *see USSG* § 2D1.1(c)(14), which, under the Guidelines, would have exposed him to a potential sentence of no more than thirty-seven months in prison.

then imposed a sentence on Allen of 156 months in prison. *Id.* at 75. In so doing, the court applied the Guidelines in their then-mandatory form, and it did not indicate what sentence it might have imposed under an advisory-Guidelines scheme. Allen has timely appealed from his sentence, and we possess jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

## II.

In assessing a challenge to a sentencing court's application of the Guidelines, we review the court's factual findings for clear error and its legal conclusions de novo. *See United States v. Ebersole*, 411 F.3d 517, 535–36 (4th Cir.2005). Because Allen has raised issues under the Supreme Court's *Booker* decision for the first time on appeal, we review those issues for plain error only. *See United States v. White*, 405 F.3d 208, 215 (4th Cir.2005).

## III.

Allen's appeal is limited to two challenges to his 156–month sentence. First, he contends that he is entitled to resentencing because the sentencing court misapplied the Guidelines when it treated him as a career offender. Specifically, he maintains that the court erred in concluding that his 1995 Convictions, when he was seventeen years of age, were adult convictions, and in concluding that those convictions were felonies for career offender purposes. Second, he maintains that he is entitled to be resentenced under the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), both because his sentence violated the Sixth Amendment and because the sentencing court erroneously applied the Guidelines as mandatory rather than as advisory. As explained below, we reject each of these contentions and affirm.

### A.

Allen first contends that the sentencing court misapplied the Guidelines in treating him as a career offender. As explained above, § 4B1.1(a) of the Guidelines provides that a defendant is a career offender if he satisfies three criteria:

(1) the defendant was at least eighteen years old at the time [he] committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

Allen concedes that he was more than eighteen years old at the time he committed his instant offense of conviction (December 31, 2002), and that such offense (distribution of cocaine base) was a controlled substance felony within the meaning of § 4B1.1. He further concedes that his 2000 Convictions, when appropriately aggregated, may properly count as a prior felony controlled substance conviction for career offender purposes. Allen maintains, however, that the sentencing court erred in counting his 1995 Convictions for career offender purposes. Although he concedes that his 1995 Convictions were for controlled substance offenses, Allen maintains that they should not count under the career offender provision of § 4B1.1 because (1) they are not "adult" convictions, and (2) they should be viewed as three "nonfelonies" and disregarded, rather than counted as a single "felony," for career offender purposes. We address these contentions in turn.

### 1.

■ First of all, we reject Allen's contention that his 1995 Convictions were not adult convictions for career offender pur-

poses. At his sentencing hearing, the prosecution proffered that probation officer Gwinn would have testified "that he spoke with authorities in North Carolina who advised him that the [1995] cases against [Allen] were adult cases." Allen contends that the court erred in relying on that representation, and in finding, on the basis thereof, that his 1995 Convictions, when he was seventeen years old, were adult convictions.

The proffer of Gwinn's testimony notwithstanding, the state court's records relating to Allen's 1995 Convictions reveal that they were adult convictions. Although a seventeen-year-old can be tried in North Carolina as either a juvenile or an adult, *see* N.C. Gen.Stat. §§ 7A–608, 610 (1995) (current version at N.C. Gen. Stat. §§ 7B–2200, 2203 (2005)), North Carolina's district courts possess *"exclusive,* original jurisdiction over any case involving a juvenile who is alleged to be delinquent," N.C. Gen.Stat. § 7A–523(a) (1995) (emphasis added) (current version at N.C. Gen.Stat. § 7B–1601 (2005)). Thus, if Allen had been tried and convicted as a juvenile, he could have been prosecuted only in a North Carolina district court.[7] The judgments underlying Allen's 1995 Convictions, however, demonstrate that he was convicted and sentenced in the *Superior* Court of Surry County, North Car-

olina,[8] and his 1995 Convictions were therefore necessarily adult convictions. Accordingly, the sentencing court was correct in finding that Allen's 1995 Convictions were adult convictions.[9]

2.

▮ Turning next to Allen's contention that his 1995 Convictions should properly be viewed as three non-felony convictions under the career offender provision, we reject that contention as well. A "controlled substance offense," for career offender purposes, is "an offense ... punishable by imprisonment for a term exceeding one year, that prohibits" manufacturing, importing, exporting, distributing, or dispensing a controlled substance. USSG § 4B1.2(b) (emphasis added). And Application Note 1 to § 4B1.2 provides that a " '[p]rior felony conviction' means a prior adult federal or state conviction for an offense *punishable* by death or imprisonment for a term exceeding one year, ... *regardless of the actual sentence imposed.*" USSG § 4B1.2, comment. (n.1) (emphasis added). Relying on what is denominated as the "Transcript of Plea" for Allen's 1995 Convictions in the Superior Court, the sentencing court found, and Allen does not dispute, that each of those convictions carried a potential sentence of thirty months of imprisonment.[10] In applying Applica-

---

7. In North Carolina, "[t]he General Court of Justice constitutes a unified judicial system for purposes of jurisdiction, operation and administration, and consists of an appellate division, a superior court division, and a district court division." N.C. Gen.Stat. § 7A–4 (2005).

8. The conviction and sentencing records for Allen's 1995 Convictions in the Superior Court of Surry County were of record in the sentencing court. The documents we refer to as the "judgments" underlying the 1995 Convictions are each entitled "Judgment Suspending Sentence—Felony."

9. We sustain the sentencing court's finding that Allen's 1995 Convictions were adult convictions without considering the Gwinn proffer, and we thus need not decide whether the Guidelines authorized the sentencing court to rely on the proffer.

10. The "Transcript of Plea" on Allen's 1995 Convictions is not a verbatim transcription of Allen's 1995 Superior Court plea proceedings, but is a standardized, two-page document that reflects the substance of his plea colloquy. The Transcript of Plea, dated August 15, 1995, was signed by Allen, his attorney, the district attorney, and the presiding Superior Court judge.

tion Note 1 to § 4B1.2, the court concluded that each of the 1995 Convictions constitutes a prior felony conviction under the career offender provision because each was punishable by more than one year of imprisonment.

On appeal, Allen maintains that the sentencing court was obliged to apply § 4A1.2, entitled "Definitions and Instructions for Computing Criminal History," in deciding whether to treat him as a career offender. In reliance thereon, he maintains that a felony conviction for an offense committed prior to age eighteen is not a "prior felony conviction," unless the defendant was actually sentenced to more than one year and one month of imprisonment, pursuant to § 4A1.2(d)(1). *See also* USSG § 4A1.2, comment. (n.7) ("[F]or offenses committed prior to age eighteen, only those that resulted in adult sentences of imprisonment exceeding one year and one month ... are counted."). Because Allen was sentenced to a six-to-eight-month term of imprisonment for each of his 1995 Convictions, he asserts that none of the convictions was a "felony" for career offender purposes. In support of his reading of the Guidelines, Allen relies on our decisions in *United States v. Bacon,* 94 F.3d 158 (4th Cir.1996), and *United States v. Mason,* 284 F.3d 555 (4th Cir.2002). As explained below, however, neither of those precedents supports his position.

In our *Bacon* decision, we concluded that a sentencing court could not, by finding that a defendant was actually innocent of the offense relating to the prior conviction, decline to sentence him as a career offender under § 4B1.1. *See* 94 F.3d at 161. Neither § 4B1.1 nor its definitional provision, § 4B1.2, addressed whether a

defendant could use his federal sentencing proceeding to collaterally attack a prior state conviction. Thus, in accordance with the commentary to § 4B1.2 that "[t]he provisions of § 4A1.2 ... are applicable to the counting of convictions under § 4B1.1," *see* USSG § 4B1.2, comment. (n.3) ("Application Note 3"),[11] we sought guidance from § 4A1.2. *See Bacon,* 94 F.3d at 161. Because § 4A1.2 generally requires a sentencing court to count prior convictions that have not been reversed, vacated, or invalidated, we ruled that the sentencing court had erred in permitting Bacon to collaterally attack his prior state conviction. *See id.* at 164.

In *Mason,* we had occasion to consider whether a prior state conviction is an "adult conviction," within the meaning of the career offender provision, if the defendant, even though convicted as an adult, was sentenced as a juvenile. *See* 284 F.3d at 558. As §§ 4B1.1 and 4B1.2 did not contemplate that a juvenile sentence could flow from an adult conviction, we again followed Application Note 3's directive and looked to § 4A1.2. In reliance thereon, we were obliged to conclude that Mason's prior conviction was not an adult conviction because he had not received an adult sentence. *See id.* at 558–62.

Allen, relying on Application Note 3, as interpreted and applied in *Bacon* and *Mason,* maintains that we should be guided by § 4A1.2 in assessing whether his 1995 Convictions constitute "felony" convictions for career offender purposes. Allen takes this position notwithstanding the fact that Application Note 1 to § 4B1.2 defines a "[p]rior felony conviction" as "a prior adult federal or state conviction for an offense *punishable* by death or imprisonment for a

---

**11.** In *Bacon,* we applied the 1994 edition of the Guidelines and, in that edition, the provision that is presently found in Advisory Note 3 to § 4B1.2 was contained, *in haec verba,* in

Application Note 4. To avoid confusion, we refer consistently to that provision as "Application Note 3."

term exceeding one year, ... *regardless of the actual sentence imposed.*" USSG § 4B1.2, comment. (n.1) (emphasis added). In Allen's view, then, a court deciding whether to sentence a defendant as a career offender (under §§ 4B1.1 and 4B1.2) is obliged to ignore any provision of §§ 4B1.1 and 4B1.2 that conflicts with § 4A1.2.

Application Note 3, however, does not require such an anomalous result; it merely directs a sentencing court, in applying the career offender provision, to look to § 4A1.2 to resolve issues not addressed by §§ 4B1.1 and 4B1.2. Thus, because both *Bacon* and *Mason* addressed issues not resolved by §§ 4B1.1 and 4B1.2, we were guided by § 4A1.2. In this appeal, by contrast, we need not look beyond the career offender provision. Section 4B1.2 defines "prior felony conviction" as a prior adult conviction for an offense punishable by more than one year of imprisonment. USSG § 4B1.2, comment. (n.1). Accordingly, § 4B1.2 mandates that Allen's 1995 Convictions, each of which was an adult conviction that carried a potential sentence of thirty months of imprisonment, be deemed "felonies" for career offender purposes, leaving nothing to be resolved by § 4A1.2. The sentencing court thus correctly counted Allen's 1995 Convictions as at least one qualifying prior conviction for career offender purposes, and it did not misapply the Guidelines in sentencing Allen as a career offender.[12]

### B.

In his second appellate contention, Allen relies on *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and contends that he is entitled to be resentenced because the sentencing court contravened the Sixth Amendment in treating him as a career offender, and also because the court erroneously applied the Guidelines as mandatory. As Allen raises his *Booker* issues for the first time on appeal, our review of them is for plain error only. *See United States v. White*, 405 F.3d 208, 215 (4th Cir.2005). Pursuant to the plain-error test, Allen is unable to secure appellate relief unless he can demonstrate that (1) the sentencing court erred, (2) such error was plain, and (3) the error affected his substantial rights. *See id.* (citing Fed.R.Crim.P. 52(b) and *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). Even then, the correction of plain error is a matter within our discretion, "which we should not exercise unless the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (quoting *Olano*, 507 U.S. at 732, 113 S.Ct. 1770) (internal quotation marks and alterations omitted).

### 1.

In its *Booker* decision, in early 2005, the Supreme Court recognized that the Sixth Amendment is contravened when a court finds "[a]ny fact (other than a prior conviction) which," under mandatory sentencing guidelines, "is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict." *See* 543 U.S. at 244, 125 S.Ct. 738. The facts admitted by Al-

---

12. In this appeal, Allen also challenges the sentencing court's finding that the first two of his 1995 Convictions were part of a common scheme or plan, pursuant to our decision in *United States v. Breckenridge*, 93 F.3d 132 (4th Cir.1996), and the court's aggregation of the sentences imposed in connection with those convictions, to achieve a total sentence of sixteen months of imprisonment. Because the court did not need to aggregate the 1995 Convictions in order to sentence Allen as a career offender, we need not address the *Breckenridge* issue.

len in his guilty plea in the district court would normally have authorized a Guidelines sentence of no more than thirty-seven months; as a career offender, Allen received a sentence of 156 months. Because the court's application of the career offender provision depended upon its factual findings, its decision to treat Allen as a career offender was, unless its factfinding fell within the "prior conviction exception" recognized in *Booker*, plainly erroneous. *See United States v. Hughes*, 401 F.3d 540, 547–48 (4th Cir.2005).

Subsequent to *Booker*, in *Shepard v. United States*, the Court wrestled with, but did not fully delineate, the scope of the prior conviction exception. *See* 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005). *Shepard* involved an issue relating to judicial factfinding under the Armed Career Criminal Act, 18 U.S.C. § 924(e) (the "ACCA"), which mandates a sentencing enhancement if a defendant has three prior convictions for serious controlled substance offenses or violent felonies. *See Shepard*, 125 S.Ct. at 1257. On solely statutory grounds, the Court held that, when the prior conviction has resulted from a guilty plea, the ACCA limits the sentencing court's factfinding authority to the "necessarily admitted elements of the generic offense," including "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or ... some comparable judicial record of this information." *Id.* at 1263. A plurality of the Justices in *Shepard* suggested that the Court's ruling was informed by "[t]he rule of reading statutes to avoid serious risks

of unconstitutionality," specifically the Sixth Amendment concerns raised by a judicial factfinding process that increases a defendant's permissible sentence. *Id.* at 1262–63 (plurality opinion).[13]

Soon after *Shepard* was decided, in *United States v. Washington*, we applied the principles enunciated in *Booker* and *Shepard*, and determined that the Sixth Amendment is contravened when disputed issues of fact, "not necessarily determined in the earlier proceeding," and which increase the defendant's permissible sentence, are resolved by a court rather than a jury. *See* 404 F.3d 834, 842–43 (4th Cir.2005). In other words, we recognized that the Sixth Amendment's prior conviction exception authorizes a sentencing court, without a jury, to look only to those sources approved by *Shepard* in making factual findings about a prior conviction that resulted from a guilty plea.

As explained above, the sentencing court enhanced Allen's sentence under the Guidelines' career offender provision on the basis of its finding that he had at least two prior felony convictions for controlled substance offenses—one for his 2000 Convictions, and another for his 1995 Convictions. Allen's challenge here is limited to his 1995 Convictions, and the court made two critical findings in connection therewith: (1) that the 1995 Convictions were adult convictions; and (2) that they constituted prior felony convictions because they were each punishable by imprisonment for more than one year. *See* USSG § 4B1.1.

In finding that Allen's 1995 Convictions were adult convictions, the sentencing court relied on probation officer Gwinn's

---

**13.** Although the Sixth Amendment portion of *Shepard* was rendered by a four-justice plurality only, Justice Thomas filed a concurring opinion contending that the prior convictions exception should be extinguished, a view of

the Sixth Amendment even stronger than that expressed by the plurality. *See Shepard*, 125 S.Ct. at 1263–64 (Thomas, J., concurring in part and concurring in the judgment).

proffered testimony "that he spoke with authorities in North Carolina who advised him that the [1995] cases against [Allen] were adult cases." The court's reliance on that proffer increased Allen's permissible sentence, and such a proffer is not among the evidentiary sources approved by the Court in *Shepard* for judicial factfinding on a prior conviction. *See Shepard*, 125 S.Ct. at 1263 (limiting judicial factfinding process to "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or ... some comparable judicial record of this information"); *Washington*, 404 F.3d at 842–43 (recognizing *Shepard*'s limits on judicial factfinding process as constitutionally mandated). Accordingly, the court's reliance on the Government's proffer of Gwinn's testimony constituted an error that was plain. *See Hughes*, 401 F.3d at 547–48.

Allen is not entitled to plain-error relief, however, unless he can further establish that the error prejudiced him by affecting his substantial rights. As we have observed, the prejudice inquiry under the plain error test focuses " 'on whether the error itself had a substantial influence' " on the underlying proceeding. *See Hughes*, 401 F.3d at 550 (quoting *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). Drawing on our earlier decisions in *United States v. Promise*, 255 F.3d 150 (4th Cir.2001) (en banc), and *United States v. Angle*, 254 F.3d 514 (4th Cir.2001) (en banc), we concluded in *Hughes* that "the prejudice inquiry in the case of a Sixth Amendment violation" under *Booker* "is whether the

district court could have imposed the sentence it did without exceeding the relevant Sixth Amendment limitation." *See* 401 F.3d at 550–51. A corollary of that rule is that a defendant cannot show prejudice from a finding of fact, made in contravention of the Sixth Amendment, if that fact would nevertheless have been found by the court in the absence of the error.

And in the present appeal, even if the sentencing court had not accepted the Gwinn proffer, it would, in any event, have found Allen's 1995 Convictions to be adult convictions. In order to decide if Allen was a career offender, the court was required to assess whether his 1995 Convictions were adult convictions. In conducting that inquiry, the Sixth Amendment authorized the court to look to the charging documents, the factual bases of Allen's guilty pleas, and any "comparable judicial record[s]" relating to the 1995 Convictions. *See Shepard*, 125 S.Ct. at 1263; *Washington*, 404 F.3d at 842–43. As explained above, *see supra* Part III.A.1, the judgments underlying Allen's 1995 Convictions reveal that they could not have been other than adult convictions, as the presiding court—the Superior Court of Surry County—lacked jurisdiction to entertain juvenile delinquency proceedings. *See* N.C. Gen.Stat. § 7A–523(a) (1995) (current version at N.C. Gen.Stat. § 7B–1601 (2005)).[14] Had the sentencing court limited itself to constitutionally permissible evidence concerning Allen's 1995 Convictions, it would have been obliged to find as it did. Accordingly, the court would necessarily have found that Allen's 1995 Convictions were adult convictions, and Allen thus was not prejudiced by the court's reliance on the

---

14. The judgments underlying Allen's 1995 Convictions are judicial records comparable to the charging documents and the factual bases for the 1995 guilty pleas. They therefore fall within the prior conviction exception

of *Booker,* to the extent they disclose facts necessarily decided in connection with Allen's 1995 Convictions. *See Shepard,* 125 S.Ct. at 1263; *Washington,* 404 F.3d at 842–43.

Gwinn proffer. *See Hughes,* 401 F.3d at 550–51.

 Moreover, contrary to Allen's contention on appeal, the sentencing court did not commit Sixth Amendment error in finding that his 1995 Convictions were felony convictions. As explained above, an adult conviction qualifies as a "felony" for career offender purposes if it is punishable by more than one year of imprisonment. Each of Allen's 1995 Convictions was for a violation of North Carolina General Statutes section 90–95. And Allen does not dispute that, in 1995, a conviction under section 90–95 carried a potential punishment of thirty months in prison. The sentencing court thus did not contravene the Sixth Amendment when, on the basis of the Transcript of Plea in the Superior Court of Surry County, it found that each of Allen's 1995 Convictions was punishable by more than one year in prison, and thus constituted a felony within the meaning of the career offender provision. *See Shepard,* 125 S.Ct. at 1263; *Washington,* 404 F.3d at 842–43. Accordingly, the sentencing court did not reversibly err in counting the 1995 Convictions as at least one qualifying prior conviction under the Guidelines' career offender provision, and then treating Allen as a career offender.

2.

 Finally, we must assess whether the sentencing court's error in treating the Guidelines as mandatory entitles Allen to a new sentencing hearing. Although the court's mandatory application of the Guidelines was plainly erroneous, *see Booker,* 543 U.S. at 245, 268, 125 S.Ct. 738; *White,* 405 F.3d at 217, the record of Allen's sentencing proceeding "provides no nonspeculative basis for concluding that the treatment of the [G]uidelines as mandatory affected the [sentencing] court's selection of the sentence imposed," *see*

*White,* 405 F.3d at 223 (internal quotation marks and alteration omitted). Accordingly, Allen cannot sustain his burden of showing that the court's mandatory application of the Guidelines affected his substantial rights, and he is not entitled to relief from his sentence on that basis. *See id.*

IV.

Pursuant to the foregoing, we reject Allen's appellate contentions and affirm the sentence imposed upon him in the district court.

*AFFIRMED*